**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIMBERLY MCNULTY, on behalf of herself and all others similarly situated, | **CASE NO:** 19-cv-8903 |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| POLAR BEVERAGES CO., INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Kimberly McNulty, on behalf of herself and all others similarly situated, bring this class action against Defendant Polar Beverages Co., Inc. for its Polar Seltzer, and allege on personal knowledge, investigation of her counsel, and on information and belief as follows:

**INTRODUCTION**

1.      This is a class action brought by Plaintiff on behalf of herself and all other similarly situated consumers ("Class Members") who purchased Polar Seltzer for personal or household use and not for resale.

2.      Defendant Polar Beverages Co., Inc. ("Defendant" or "Polar") is an American company that produces and markets flavored beverage products that are sold throughout the United States, including the State of New York. Polar manufactures, advertises, markets, distributes and sells Polar 100% Natural Seltzer (the "Polar Products") in various flavors.

3.      As alleged with specificity herein, through an extensive, uniform, nationwide advertising and marketing campaign, Polar has knowingly and intentionally misrepresented to

consumers, including Plaintiff and Class Members, the true nature and quality of the Polar Products by claiming that the products are "100% natural" when in fact they are not.

4.     In a recent report from the Center for Applied Isotope Studies at the University of Georgia, various flavors of the Polar Products were found to be comprised of between 58% and 96% synthetic ingredients.

5.     Plaintiff and Class Members are consumers who were deceived and mislead by the "100% natural" advertising, marketing, packaging and labeling of the Polar Products, and induced into purchasing the Polar Products based on that 100% natural promise. Had Plaintiff and Class Members known the true nature and quality of the Polar Products, they would not have purchased the products, or they would not have purchased the products at prices that exceeded the products' true value.  Consequently, Plaintiff and Class Members did not receive the benefit of their bargain.

6.     Polar's false, misleading and deceptive conduct violates well-established contract, tort, and consumer protection laws of the State of New York, and Plaintiff therefore bring this class action on behalf of themselves and Class Members to recover damages and equitable relief to the fullest extent allowable under applicable law.

## **PARTIES**

7.     Plaintiff Kimberly McNulty is a resident and citizen of New York living in Bronx County, New York.

8.     Defendant Polar Beverages Co., Inc. is a Delaware corporation with a principal place of business located at 1001 Southbridge St., Worcestor, MA 01610. Defendant conducts business throughout the United States, including but not limited, marketing, advertising, distributing and selling the Polar Products in the State of New York.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the State of New York.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the State of New York, during the relevant time period, at which time Defendant was engaged in business activities in the State of New York.

10.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.      Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendant conducts business in this District and has intentionally availed itself of the laws and markets within this District.

## FACTS COMMON TO ALL CLASS MEMBERS

**A.  Defendant's Deceptive and Unlawful Conduct Regarding the Polar Products**

**i.      Defendant's Deceptive Advertising and Labeling of the Polar Products**

3

12.     Defendant manufactures, advertises, markets, distributes and sells the Polar Products throughout the United States, including in New York.

13.     As alleged later in this Complaint, Polar Products are marketed as "100% natural" seltzer products, and are sold at retail stores such as Amazon, Walmart, Target, Walgreens, and local grocery stores among others.

14.     The deceptive claim of "100% natural" has been made and repeated across a variety of media including Defendant's product labels, websites and online promotional materials, and at the point-of-purchase, where they cannot be missed by consumers.  In truth, Defendant's deceptive 100% natural claim is false, misleading and deceptive because the Polar Products are not 100% natural and, in fact, contain between 58% and 96% synthetic ingredients.

15.     Defendant's false, misleading and deceptive marketing campaign is on the front and center of every box and container.









**B.     The Polar Products are Not 100% Natural.**

16.     Many ingredients contained in consumer products today are either natural or synthetic substances. For instance, naturally derived caffeine from green tea extract rather than synthetic is a popular trend in consumer products looking for the more health-driven consumer. For consumers who are seeking truly "natural" ingredients, they must trust the product's labeling.

17.     All though natural and synthetic substances may be nearly chemically identical, sophisticated testing is available to distinguish between the two.

18.     The Center for Applied Isotope Studies (CAIS) at the University of Georgia is at the forefront of the scientific community in applying analytic measurements to determine whether food ingredients are "synthetic" or "natural."

19.     CAIS uses compound specific stable isotope analysis ("CSIA") and gas chromatography isotope ratio mass spectrometry ("GC/IRMS") to generate multi-component,

multi-element data for the enhanced characterization of organic chemical processes and source validation.[1]

20.    CAIS used these methods to determine whether the Polar Products contain only natural ingredients as advertised, or whether the Polar Products also contain synthetic ingredients.

21.    It was determined by CAIS that the Polar Products contain between 58% and 96% synthetic ingredients—a far cry from the company's claim of "100% natural."

C.    **The Impact of Defendant's Misleading and Deceptive Advertising**

22.    Defendant intended for consumers to rely upon the representations on the Polar Product labels, and reasonable consumers did, in fact, so rely. These representations are often the only source of information consumers can use to make decisions concerning whether to buy and use such products.

23.    Consumers lack the ability to test or independently ascertain the genuineness of product claims of normal everyday consumer products, especially at the point-of-sale. Reasonable customers, including Plaintiff, must—and do in fact—rely on consumer product companies, such as Defendant, to honestly represent their products and a product attributes on the product labels.

24.    At all relevant times, Defendant directed the above-referenced Polar Products' labels, statements, claims and innuendo, including that the products were all-natural, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Polar Products.

25.    Plaintiff and Class Members did reasonably rely on Defendant's Polar Products' labels, statements, claims and innuendo in deciding to purchase the Polar Products and were thereby deceived.

---

[1] https://cais.uga.edu/analysis_natural_products.html (last visited January 18, 2019).

27.     As a result of Defendant's deceptive labeling and/or marketing campaign, Defendant has caused Plaintiff and putative Class Members to purchase the Polar Products, which are not 100% natural. Plaintiff and putative Class Members have been harmed in the amounts they respectively paid for the Products.

28.     As a result of Defendant's misconduct, Defendant was able to sell the Polar Products to hundreds of thousands of consumers in the United States, including to Plaintiff and putative Class Members in the State of New York, and to realize sizeable profits.

29.     Plaintiff and putative Class Members were harmed and suffered actual damages in that Plaintiff and putative Class Members did not receive the benefit of their bargain as purchasers of the Polar Products, which were represented as being 100% natural, when they are not. Instead, Plaintiff and putative Class Members are worse off after purchasing the Products, as Plaintiff and putative Class Members paid for Products that are not 100% natural. Defendant developed and knowingly employed a labeling, advertising and/or marketing strategy designed to deceive consumers into believing that the Polar Products are 100% natural, when they are not.

30.     The purpose of Defendant's scheme is to stimulate sales and enhance Defendant's profits.

31.     As the manufacturer, advertiser, distributor and seller of the Polar Products, Defendant possesses specialized knowledge regarding the products and the content and effects of the ingredients contained therein. In other words, Defendant knew exactly what is – and is not – contained in the products.

32.     Defendant knew or should have known, but failed to disclose to consumers, that the Polar Products are not 100% natural as labeled and/or marketed by Defendant.

33.    Plaintiff and putative Class Members were, in fact, misled by Defendant's labeling, representations and marketing of the Polar Products.

34.    Plaintiff and Class Members would not have purchased the Polar Products, or would have paid less for them, had they known the Products were not 100% natural.

## PLAINTIFF'S EXPERIENCES

### Plaintiff Kimberly McNulty

35.    Plaintiff Kimberly McNulty is a resident of the Bronx, Bronx County, New York.

36.    On ten or fewer occasions, Plaintiff McNulty purchased Polar Products for herself and her family's consumption at Target. Most recently, on June 12, 2019, Plaintiff McNulty purchased a 12-pack of Polar 100% Natural Seltzer from the Target store located in Bronx County. In particular, she purchased the Cranberry Lime flavor of Polar Seltzer on that date.

37.    Plaintiff McNulty tries to purchase products that are natural or organic, whenever possible. She purchased the Polar Products in large part because of their claims of being "100% natural."

38.    Plaintiff McNulty read both the packaging of the twelve-packs and on the individual cans of Polar Products. She noticed and relied on the fact that that the packaging of the twelve-pack and the cans included the phrase "100% natural" when she decided to purchase the Polar Products.

39.    Plaintiff McNulty and her family consumed some of the Polar Products based upon their belief that the products were "100% natural."

40.    Had Plaintiff McNulty been aware of the misrepresentations made by Defendant on and in regards to their Polar Products, she would not have purchased the Polar Products, or else would have paid significantly less for them. She did not receive the benefit of her bargain.

41.    If Polar Products were produced in conformity with their "100% natural" labeling, Plaintiff McNulty would be interested in purchasing them again in the future.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action against Defendant individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> *During the fullest period allowed by law, all persons residing in the state of New York who purchased the Polar Products for their personal use and not for resale.*

43.    Excluded from the Class are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

44.    Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

45.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

46.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil**

**Procedure 23(a) and 23(b)(3):** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

    a.  Whether the Polar Products are 100% natural and contain only carbonated water and natural ingredients;

    b.  Whether Defendant's marketing, advertising, packaging, labeling and/or promotional materials for the Polar Products are deceptive, unfair, unlawful or misleading to reasonable consumers;

    c.  Whether Defendant's acts, omissions, or misrepresentations of material fact violate New York consumer protection law;

    d.  Whether Defendant's breached its contract with consumers with its deceptive and unlawful marketing, advertising, packaging, labeling and/or promotional materials for the Polar Products;

    e.  Whether Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

    f.  Whether Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members in connection with the Polar Products; and

    g.  Whether Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief.

47.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Defendant manufactured, marketed, advertised, distributed and sold the Polar Products in a deceptive manner, misrepresenting that the product contained 100% natural ingredients when, in fact, they do not.

48.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the Members of the Class, as each putative Class Member was subject to the same uniform deceptive misrepresentation regarding the purported 100% natural content of the

Polar Products. Plaintiff shares the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiff and all putative Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive misrepresentations regarding the 100% natural content of the Polar Products.

49.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Class.

50.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

51.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described

below, with respect to Class as a whole.

52.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

        a.    The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

        b.    Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

        c.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

        d.    Individual joinder of all putative Class Members is impracticable;

        e.    Absent a class action, Plaintiff and putative Class Members will continue to suffer harm as a result of Defendant's unlawful conduct; and

        f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendant.

53.     In the alternative, the Class may be certified for the following reasons:

        a.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

        b.    Adjudications of individual Class and Members' claims against Defendant would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

        c.    Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## FIRST CLAIM FOR RELIEF
### Violations of the Unfair and Deceptive Trade Practices Act
### New York GBL § 349, *et. seq.*

54.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

55.    Defendant's foregoing deceptive acts and practices, including their omissions, were directed at consumers, including Plaintiff and Class Members.

56.    Defendant's foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the Polar Products' ingredients. Defendants omitted material facts regarding the Polar Products by failing to disclose that the products contained synthetic ingredients.

57.    Rather than disclose this information, Defendant engaged in a widespread, uniform, marketing and advertising campaign that misrepresented the Polar Products as having 100% natural ingredients, when they do not.

58.    The Polar Products contain synthetic ingredients and are not 100% natural as represented by Defendant.  Defendant did not disclose this information to consumers, Plaintiff, or Class Members.

59.    Defendant's foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law § 349,  in that:

> a.    Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Polar Products as being all 100%  natural, when they knew, or should have known, that the products contained synthetic ingredients;

> b.    Defendant knew the absence of all natural ingredients, and the presence of synthetic ingredients, in the Polar Products was unknown to and would not be easily discovered by Plaintiff and Class Members, and would defeat their

ordinary, foreseeable and reasonable expectations concerning the performance of the products; and

c.  Plaintiff and Class Members were deceived by Defendant's failure to disclose and could not discover the absence of 100% natural ingredients, and presence of synthetic ingredients, in the Polar Products prior to purchasing the products.

60.    Plaintiff and the Class Members suffered damages when they purchased the Polar Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and Class Members who were unaware that the Polar Products did not contain 100% natural ingredients when they purchased the Polar Products.

61.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and Class Members, would not have purchased their Polar Products had they known about the absence of 100% natural ingredients and the presence of synthetic ingredients in the Polar Products.

62.    As a direct and proximate result of Defendant's deceptive acts and practices, including their omissions, Plaintiff and Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

63.    In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Violations of the New York Deceptive Sales Practices Act**
**N.Y. Gen. Bus. L. § 350**

64.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

65.    New York General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." The term "false advertising" includes "labeling, of a commodity,…if such advertising is misleading in a material respect." N. Y. Gen. Bus. L. § 350-a(1). In determining whether advertising is misleading, the law takes into account not only representations made by statement, word, design, or any combination thereof, but also the "extent to which the advertising fails to reveal facts material in light of such representations…" N.Y. Gen. Bus. L. § 350-a(1).

66.    As more fully set forth above, Defendant's conduct described herein violates New York General Business Law § 350. Defendant, while engaged in conduct of business, trade and commerce, did attempt to directly and/or indirectly induce consumers to purchase the Polar Products by its labeling. In doing so, Defendant utilized false labeling which did not represent the true nature and quality of the Polar Products, but rather mislead consumers into believing that the product had a 100% natural quality that it did not. The false labeling was materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances.

67.    Defendant's conduct caused and continues to cause injury to consumers, including Plaintiff and putative Class Members, in that they were misled to believe that they were purchasing an 100% natural product, when in fact they were not.

68.    In making and disseminating the false labeling, Defendant knew or should have known that its practices were materially deceptive and misleading. Plaintiff and putative Class Members based their decision to purchase the Polar Products in substantial part on Defendant's labeling, advertisements, material representations and omitted facts. The revenue to Defendant attributable to the sale of the Polar Products is reasonably estimated to be millions of dollars.

69.     Based on all of the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiff and putative Class Members to sustain injury in fact – the loss of monies paid for the Polar Products.

### THIRD CLAIM FOR RELIEF
**Breach of Contract/Common Law Warranty**

70.     Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

71.     To the extent Defendant's commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

72.     Plaintiff and putative Class Members purchased the Polar Products either directly from Defendant or through retailers such as Amazon, Walmart, Target, Walgreens, and local grocery stores, among others.

73.     Defendant expressly warranted that the Polar Products were fit for their intended purpose in that the products were formulated with 100% natural ingredients.

74.     Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, New York Class Members, and Defendant.

75.     Defendant breached the warranties and/or contract obligation by placing the Polar Products into the stream of commerce and selling them to consumers, when the products do not contain 100% natural ingredients or the properties they were represented to possess. Due to the absence of "100% natural" ingredients, the Polar Products are not fit for their intended use as completely natural products. The absence of 100% natural ingredients substantially and/or completely impairs the use and value of the Products.

76.     The absence of 100% natural ingredients, and significant presence of synthetic ingredients, in the Polar Products at issue herein existed when the Polar Products left Defendant's possession or control and were sold to Plaintiff and New York Class Members.

77.     The absence of 100% natural ingredients, and the presence of synthetic ingredients, impaired the use and value of the Polar Products and was not discoverable by Plaintiff and New York Class Members at the time of their purchase of the products.

78.     As a direct and proximate cause of Defendant's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Polar Products if they knew the truth about the synthetic ingredients that constiue over half of the ingredients in the Polar Products.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment

79.     Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

80.     Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Polar Products. Defendant was aware of and took advantage of that benefit.  By its wrongful acts and omissions described herein, including selling the Polar Products, which are not 100% natural and instead contain synthetic ingredients, Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

81.     Plaintiff's and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

82.     Defendant profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be

unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Polar Products.

83.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Polar Products on the same terms or for the same price had they known that the products were not 100% natural and contained synthetic ingredients, and were not fit for their intended use as "100% natural" products.

84.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Polar Products contained 100% natural ingredients and not synthetic ingredients, as represented by Defendant in advertising, on Defendant's websites, and on the Polar Product labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

85.     Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

86.     When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Polar Products was either direct or through authorized sellers. Purchases made through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Polar Products.

87.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, request the Court enter judgment against Defendant Polar Beverages Co., Inc. and accordingly requests the following:

A.     An order declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.     An order awarding Plaintiff and Class Members statutory damages, and provided by the applicable state consumer protection statutes invoked above;

C.     An order awarding Plaintiff and Class Members restitution of the funds that unjustly enriched Defendant at the expense of Plaintiff and Class Members;

D.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from monies recovered for or benefits bestowed on the Class;

E.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and,

F.     Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

DATED: September 19, 2019.           Respectfully submitted,

*s/ Mitchell M. Breit*

Mitchell M. Breit
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
mbreit@simmonsfirm.com

Greg Coleman (*pro hac vice* to follow)
Rachel Soffin (*pro hac vice* to follow)
Lisa A. White (*pro hac vice* to follow)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Nick Suciu III (*pro hac vice* to follow)
Stephen Cohen (*pro hac vice* to follow)
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
Telephone: (313) 303-3472
nicksuciu@bmslawyers.com