UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   KIMBERLY MCNULTY, et al.,
                        Plaintiffs,

                   19 Civ. 8903 (LGS)
         -against-

                   OPINION & ORDER
   POLAR CORP.,
                        Defendant.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Kimberly McNulty brings this putative consumer class action against Defendant Polar Corp., alleging various state law claims arising out of its labeling flavored seltzer beverages as "100% NATURAL." Defendant moves to dismiss the Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), arguing that Plaintiff lacks standing and that the Complaint fails to state a claim. Defendant also seeks a stay of litigation. For the reasons below, the motion is granted in part and denied in part.

**I. BACKGROUND**

       The following facts are drawn from the Complaint and are assumed to be true for the purposes of this motion. *See Lynch v. City of New York*, 952 F.3d 67, 71 (2d Cir. 2020).

       Defendant manufactures flavored seltzer beverages (the "Products") that are sold in retail stores. The Products come in a variety of flavors and are labeled "100% NATURAL" on their packaging and container labels. In June 2019, Plaintiff purchased a Cranberry-Lime flavor box of the Products for $4.99 at Target. Plaintiff buys natural or organic products when possible and decided to purchase the Products after reading "100% NATURAL" on the label.

       The Center for Applied Isotope Studies recently performed radiocarbon testing to determine whether Defendant's Products are flavored or made with synthetic substances.

According to the Complaint, radiocarbon testing differentiates between "bio-based" and "petrochemical-based" content, which is one way to measure whether food is made with "synthetic" or "natural" ingredients.  Testing revealed that extracts of the Products produced estimates of 58% to 96% non-bio-based carbon content, meaning the Products include artificial compounds.

The Complaint alleges that Plaintiff would not have purchased the Products or would have paid significantly less if she knew the Products were not as represented, *i.e.*, not 100% natural.  As a result of purchasing the Products, Plaintiff is "worse off," since she believed the Products were 100% natural and discovered that she did not receive the benefit of her bargain.  Plaintiff would be interested in purchasing the Products in the future, if they were as represented.

Plaintiff filed this lawsuit on behalf of herself and others similarly situated, alleging that Defendant labels the Products as "100% NATURAL" to enhance its profits when the Products are not actually as represented.  The Complaint alleges violations of New York laws on unfair and deceptive trade and sale practices, New York Gen. Bus. L. ("GBL") §§ 349 and 350, and breach of contract.  Plaintiff seeks, among other remedies, monetary damages and declaratory relief.

## II.   LEGAL STANDARDS

"A suit brought in federal court is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Citizens for Responsibility & Ethics in Washington v. Trump*, 953 F.3d 178, 188 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  Plaintiff bears the burden of establishing standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).  When the parties are disputing

standing based solely on the pleadings, "all material allegations of the complaint" are accepted as true and the complaint is construed "in favor of the complaining party." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016); *accord MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18 Civ. 8036, 2020 WL 91540, at *1 (S.D.N.Y. Jan. 8, 2020).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quotation marks omitted)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence." *Id.* (citing *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012)).

### III. DISCUSSION

#### A. Rule 12(b)(1)

Defendant argues that Plaintiff lacks standing to seek prospective declaratory relief and to assert claims on behalf of the putative class with respect to Products in flavors that she did not purchase. Plaintiff lacks standing to seek prospective declaratory relief, but she has standing to bring claims with respect to unpurchased products subject to further inquiry at the class certification stage.

### 1. Standing to Pursue Declaratory Relief

Because the Complaint fails to allege a sufficient likelihood of future injury, Plaintiff lacks standing to pursue declaratory relief. Under Article III, "a plaintiff must demonstrate standing for each claim and form of relief sought." *Nat. Resources Def. Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 86 (2d Cir. 2013) (quotation marks omitted); *accord Duran v. Henkel of Am., Inc.*, No. 19 Civ. 2794, 2020 WL 1503456, at *11 (S.D.N.Y. Mar. 30, 2020). Thus, to have standing to pursue declaratory relief, a plaintiff must establish "the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir.2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *accord In re Welspun Litig.*, No. 16 Civ. 6792, 2019 WL 2174089, at *6 (S.D.N.Y. May 20, 2019). Instead, "[t]o obtain *prospective* relief, such as a declaratory judgment or an injunction," "a plaintiff must show . . . 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *Dorce v. City of New York*, No. 19 Civ. 2216, 2020 WL 2521320, at *8 (S.D.N.Y. May 17, 2020). Alleging "possible future injury" is insufficient. *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quotation marks omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 40 (2013)).

Plaintiff does not have standing to pursue declaratory relief. The Complaint alleges that Plaintiff "would be interested in purchasing" the Products, if they are produced "in conformity" with the "100% NATURAL" representation, and that if she had been aware of the

4

misrepresentation, Plaintiff would not have purchased the Products at all.  Because Plaintiff does not seek to purchase the Products while they are produced with synthetic ingredients, there is no likelihood of future harm.  *See, e.g.*, *Duran*, 2020 WL 1503456, at *12 (no standing for injunctive relief given no real or immediate threat of future injury where plaintiff alleges that he would purchase the product only if it had been "re-engineered" to live up to its representation) (collecting cases).  *But see Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 7735, 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018).  The claims for declaratory relief are dismissed.

### 2. Standing for Damages Claims Relating to Unpurchased Products

Plaintiff has standing to bring the surviving damages claims.  Defendant contends that Plaintiff lacks Article III standing to pursue claims for Products in flavors that she did not purchase and that the flavors are not "sufficiently similar" to allow Plaintiff to serve as a class representative.  These arguments are rejected.  Evaluating standing in a class action requires a two-step inquiry.  First, the plaintiffs and putative class representatives must have Article III standing, meaning "for every named defendant there . . . [is] at least one named plaintiff who can assert a claim directly against that defendant."  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012).  Second, a plaintiff must have class standing, which requires that "he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) . . . such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Id.* at 162 (internal citations and quotation marks omitted).  Courts in this Circuit split over whether class standing should be resolved at the pleading stage.  *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 562-63 (S.D.N.Y. 2016) (collecting cases that have and have not resolved class standing at the motion to

5

dismiss stage). Some courts have held that, "subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff *did* purchase." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 18 Civ. 11742, 2020 WL 1330662, at *3 (S.D.N.Y. Mar. 23, 2020) (quotation marks omitted) (emphasis in original).

Here, the Article III standing requirement is satisfied, since Plaintiff has standing to assert claims based on her own purchases, which Defendant does not dispute. Instead, Defendant disputes that Plaintiff has standing to assert claims on behalf of consumers who purchased Products in other flavors than Plaintiff has purchased. To the extent class standing needs to be addressed at this stage, the Products are sufficiently similar to support Plaintiff's class standing at this time. The "nature and content of the specific misrepresentation alleged," *NECA–IBEW Health & Welfare Fund*, 693 F.3d at 162, is similar with respect to all of the Products' various flavors. All the Products were labeled in the same manner -- the statement "100% NATURAL" is on each can and package -- and the labels were deceptive for the same reason, as the Products actually contain between "58% and 96% synthetic ingredients or materials." Defendant argues that Plaintiff failed to allege that the products "share the same ingredients or formulation," but this is not required. The Products, which are all seltzer beverages differing in flavor only, are sufficiently alike to find Plaintiff has class standing at this stage. *See, e.g.*, *Suarez v. California Nat. Living, Inc.*, No. 17 Civ. 9847, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (determining there is class standing at the pleading stage where Plaintiff allegedly purchased three of thirty-two cosmetics products, ranging from bubble baths to bug repellent, since the products were sufficiently similar and marketed in a similarly

deceptive manner). Defendant's motion to dismiss for lack of standing for unpurchased products is denied, and "any specific concerns regarding the [products'] differences can be addressed at the class certification stage." *Wai Chu*, 2020 WL 1330662, at *3 (quotation marks omitted).

### B. Rule 12(c)

Defendant moves for judgment on the pleadings as to all claims on two grounds: they rely on implausible facts and are preempted by federal law. The former argument is without merit. Regarding preemption, Defendant fails to meet its burden. As to the sufficiency of each individual cause of action, the motion is denied with respect to the claims under GBL Sections 349 and 350, and granted with respect to the breach of contract claim.

#### 1. Implausibility of Facts

Defendant argues that Plaintiff's claims rely on implausible facts, because the Products are made primarily with water and flavors certified as "natural" and cannot, as the Complaint alleges, be "comprised of between 58% and 96% synthetic ingredients or materials." This argument is unpersuasive. When assessing plausibility, a court may "view the allegations of the [c]omplaint in combination rather than piecemeal." *Lynch*, 952 F.3d at 82. As Defendant points out, the Complaint alleges that the Products are "comprised of" a significant percentage of synthetic ingredients or materials. The Complaint also contains allegations particular to the test results, which state that "extracts from the [Products'] samples produced estimates of petrochemical, hence artificial, carbon content ranging from 58% to 96% of the sample carbon content." These allegations give rise to the inference that the alleged amounts of synthetic materials may be estimated percentages of the flavoring ingredients and not the Products overall. Thus, the facts as alleged are plausible.

Defendant's assertion that "Polar Products are overwhelmingly comprised of water"

cannot be considered at this stage because it is based on an allegation in the answer to the initial complaint and not the current Answer to the operative Complaint.  On a Rule 12(c) motion, a court may consider the complaint, the answer, attachments to either, and also documents considered "integral" to the complaint.  *See L-7 Designs, Inc. v. Old Navy*, *LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *accord Costco Wholesale Corp. v. GAP Partners IV, LLC*, 703 Fed. App'x 54 (2d Cir. 2017) (summary order).  Defendant also asserts that certifications by "third-party flavor vendors," validating the Products' flavors as "natural in accordance with the regulations of the [Food and Drug Administration]," can be considered as "integral to the complaint."  This argument is incorrect because the Complaint does not "rel[y] heavily" on the certifications' actual "terms and effect."  *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).  Even if these additional allegations were considered in testing the sufficiency of the Complaint, they would be unavailing because of the requirement that all allegations in the complaint be accepted as true and all inferences be drawn in favor of the non-moving party.  *See Littlejohn*, 795 F.3d at 306.

          **2.**     **Preemption**

Defendant argues that the Food, Drug, and Cosmetic Act (the "FDCA"), as amended by the Nutrition Labeling Education Act ("NLEA"), and the Food and Drug Administration's ("FDA") notice of proposed rulemaking, providing its informal policy on the use of the term "natural," 56 Fed. Reg. 60,421, 60,466 (proposed Nov. 27, 1991) ("1991 Notice"), "expressly" preempt Plaintiff's claims.  This argument is incorrect.  Pursuant to the Supremacy Clause, "a federal statute may expressly preempt state law."  *See Kansas v. Garcia*, 140 S. Ct. 791, 801, 206 L. Ed. 2d 146 (2020).  Express preemption clauses are construed narrowly.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  "The party asserting that federal law preempts state law bears

the burden of establishing preemption." *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013)).

Defendant has failed to carry its burden of establishing preemption. The NLEA states that it "shall not be construed to preempt any provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343-1(a)] of the [FDCA]." Pub. L. No. 101-535, § 6(c), 104 Stat. 2353, 2364 (21 U.S.C. § 343-1 note) (emphasis added). This preemption provision expressly preempts any state law requirement that is "not identical to" specified misbranding provisions of the FDCA. *See* 21 U.S.C. § 343-1(a). "Because the FDA has not created a rule for when food products may be labeled 'natural,' courts have found that plaintiffs' state law claims challenging the use of 'natural' as false and misleading are not preempted by the FDCA." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 181 (E.D.N.Y. 2018) (collecting cases), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (summary order); *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 246 (S.D.N.Y. 2019) (no express preemption of state law claims alleging misleading "natural" product claims). The 1991 Notice cannot preempt Plaintiff's claims additionally because it is non-binding guidance without preemptive effect. *See Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409, 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) (holding that "the FDA's inaction" regarding the use of the term "natural" cannot have preemptive effect); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *7 (E.D.N.Y. Aug. 29, 2013) (declining preemption based on the 1991 Notice). Plaintiff's breach of contract claim is also not preempted because it involves an alleged contractual commitment by a manufacturer, not a requirement imposed under state law. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005). Thus, the claims are not

preempted.

### 3.     GBL Sections 349 and 350 Claims

Defendant argues that the Complaint does not adequately allege actual injury as required for claims brought under GBL Sections 349 and 350. This argument is unpersuasive. To state a claim under either GBL Sections 349 or 350, the Complaint must allege that the "plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quotation marks omitted). Injury can be shown where the Complaint alleges "an overpayment, or price premium, whereby a plaintiff pays more than she would have but for the deceptive practice." *Duran*, 2020 WL 1503456, at *7 (quotation marks omitted); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (explaining that "the issue of 'price premium' [is] relevant [in consumable goods cases] because it show[s] that the plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"). To allege injury based on the "price premium" theory, the Complaint must also allege the connection between the injury and the "materially misleading practice." *Id*. In consumer goods cases, the connection is often stated as follows: "A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran*, 2020 WL 1503456, at *7.

Drawing all inferences in favor of Plaintiff, the Complaint adequately alleges injury under a "price premium" theory. It alleges that the purpose of Defendant's misrepresentation was to "enhance Defendant's profits," and had Plaintiff been aware that the Products were not 100% natural, she "would have paid significantly less for them." The Complaint further alleges

10

that she and the other consumers are "worse off" after the purchases and did not receive the benefit of their bargain, since they paid for products that were inferior to what was promised. Allegations that a product "had significantly less value than it warranted" constitute a "classic price premium theory of injury that is plausible and cognizable." *See Izquierdo v. Panera Bread Co.*, No. 18 Civ. 12127, 2020 WL 1503557, at *8 (S.D.N.Y. Mar. 30, 2020) (quotation marks omitted). Defendant argues that the Complaint lacks information on the actual price premium, but the Complaint provides the price at which Plaintiff last purchased the Products, which is sufficient. *See Duran*, 2020 WL 1503456, at *8; *Izquierdo*, 2020 WL 1503557, at *8.

Defendant's remaining two arguments with respect to these claims are rejected. Defendant's argument that individualized questions of injury would "cleave[] the putative class in two" is appropriately addressed later, at the class certification stage. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 21 (2d Cir. 2003) (finding conclusions with respect to class certification premature where there has been "no class certification motion filed" or "class discovery"). Defendant's argument as to the significance of Plaintiff's purchase of the Products three weeks after the radiocarbon test results requires "assess[ing] the weight of the evidence," which is not the "court's task" at this juncture. *Littlejohn*, 795 F.3d at 306. The motion is denied as to the GBL Sections 349 and 350 claims.

### 4. Breach of Contract Claim

The Complaint's third claim for relief is titled "Breach of Contract / Common Law Warranty." Defendant reasonably construed the claim as a breach of express warranty claim, because the Complaint alleges that Defendant "expressly warranted that the Polar Products were fit for their intended purpose in that the products were '100% NATURAL,'" which became the "basis of the bargain," and that Defendant "breached the warranties and/or contract obligation."

11

Defendant argued that the Complaint is deficient in pleading facts necessary for an express warranty claim based on both the Uniform Commercial Code and common law.  In response, Plaintiff expressly renounced any breach of express warranty claim, asserting that the Complaint adequately pleads a breach of contract claim.[1]  The breach of contract claim is dismissed for lack of privity.

To state a breach of contract claim, "the complaint must allege . . . the formation of a contract between the parties."  *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (quotation marks omitted) (applying New York law).  "Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties."  *See CDJ Builders Corp. v. Hudson Grp. Const. Corp.*, 889 N.Y.S.2d 64, 65 (2d Dep't. 2009) (citation omitted); *OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*, 995 N.Y.S.2d 35, 38 (1st Dept 2014) (dismissing breach of contract claims for lack of privity).  "Vertical privity exists only between immediate links in a distribution chain; a buyer in the same chain who did not purchase directly from a seller is 'remote' as to that seller."  18 Williston on Contracts § 52:41 (4th ed. 2020).

---

[1] Plaintiff, in her opposing memorandum of law, notes that the Complaint's third claim for relief is for "Breach of Contract/Common Law Warranty," and that "in the event the statements on the Product labels are deemed not to be a warranty under New York Uniform Commercial Code ("UCC") or common law, Plaintiff brings a claim for breach of contract claim under New York Law."  This explanation could be understood to re-assert a common law warranty claim in response to Defendant's arguments.  However, a New York common law breach of warranty claim is a breach of express warranty claim, which Plaintiff has renounced.  *See Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614, 2018 WL 3869896, at *7 (S.D.N.Y. Aug. 15, 2018) ("To state a claim for common law breach of warranty, a plaintiff must show that (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." (internal quotation marks omitted)).  To the extent Plaintiff is asserting a different kind of common law warranty claim, it is not adequately pleaded.

Here, the Complaint alleges that Plaintiff purchased the Products from Target only. Without allegations of a direct purchase from Defendant, or facts indicating the existence of some exception to privity -- like a third-party beneficiary or agency theory -- no privity or formation of contract can be discerned. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 401 (E.D.N.Y. 2010) (applying New York law and dismissing breach of contract claim based on misleading label where no allegations suggested privity). Plaintiff argues that similar breach of contract claims are "routinely certified as class actions in New York." While true, this argument says nothing of whether a claim is sufficiently alleged. The breach of contract claim is dismissed.

### C.     Primary Jurisdiction

Defendant argues that the case should be stayed pursuant to the primary jurisdiction doctrine, pending the outcome of FDA guidance on the use of the term "natural." The primary jurisdiction doctrine "is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). Defendant asserts that a stay is warranted as the FDA has begun its rulemaking process as to the "use of the term 'natural' in the labeling of human food products." Request for Information and Comments, 80 FR 69,905 (Nov. 12, 2015) ("2015 Notice"). The application for stay is denied.

The primary jurisdiction doctrine has a "relatively narrow scope," and does not apply when claims involve matters within the "traditional realm of judicial competence." *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002) (quotation marks omitted); *accord Duncan v. Sullivan Cty.*, No. 18 Civ. 9269, 2020 WL 1033064, at *8 (S.D.N.Y. Mar. 2, 2020).

13

Rather, the doctrine applies when "enforcement of the claim[s] require[] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Ellis*, 443 F.3d at 81 (internal citations and quotations omitted). "[T]he Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine—uniformity and expertise." *Id.* at 90. Courts in this Circuit consider several factors: "(1) whether the question at issue . . . involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Id.* at 82-83.

      Regarding the first two factors, the technical issue of whether certain ingredients are "natural" is within the FDA's "particular field of expertise" or discretion. *See, e.g.*, *In re KIND LLC "Healthy & All Natural" Litig.* (*In re Kind LLC I*), 209 F. Supp. 3d 689, 695 (S.D.N.Y. 2016) ("[T]he issue of whether the particular ingredients . . . rendered the 'all natural' label misleading seems to be particularly within the FDA's discretion."); *Rosillo v. Annie's Homegrown Inc.*, No. 17 Civ. 02474, 2017 WL 5256345, at *2 (N.D. Cal. Oct. 17, 2017) (granting stay in part because FDA guidance could explain whether presence of "xanthan gum" renders misleading the representation of products as "natural"). However, evaluating whether "natural" product claims are misleading or deceptive is also considered within the realm of the conventional experience of judges. *See, e.g.*, *In re Kind LLC "Healthy & All Natural" Litig.* (*In re Kind LLC II*), No. 15-MC-2645, 2019 WL 542834, at *3 (S.D.N.Y. Feb. 11, 2019) (lifting stay, explaining that "this Court determined that the issue was within the conventional experience of judges"); *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409, 2014 WL 1998235, at *5

(S.D.N.Y. May 15, 2014). The issues presented in this case seem "far less about science than . . . about whether a label is misleading." *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12–MD–2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013). The Complaint alleges that the labels state that the Products are "100% NATURAL," despite the presence of synthetic ingredients as revealed by radiocarbon testing. The relevant inquiry seems to be not whether a certain ingredient is artificial, but whether a reasonable consumer would be misled into thinking that the Products do not contain any non-bio-based carbon. This question is within the realm of the conventional experience of judges and juries. *See Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 7735, 2018 WL 1614349, at *10 (S.D.N.Y. Mar. 30, 2018) ("[W]hether a reasonable consumer acting reasonably would find the term 'natural' deceptive when a product contains both natural and synthetic ingredients is a question this Court and Jury are well suited to entertain."). Accordingly, expertise does not weigh in favor of a stay.

Likewise, uniformity does not strongly weigh in favor of a stay. There is the potential for inconsistent rulings until the FDA defines the term "natural." But it is unclear whether the FDA's definition would provide clarity on whether the presence of non-biobased carbon content renders the representation misleading. *See In re Kind LLC II*, at *3 (explaining that the court had found the risk of inconsistent rulings and prior application to the FDA "slightly" in favor of stay "in view of countervailing considerations that any FDA definition of 'natural' would not 'conclusively resolve [the] issue[s]' in the case"); *Frito-Lay*, at *8 ("There is no telling . . . how the FDA would define the term."). Further, the "especially problematic" types of inconsistent rulings are those "arising within the *same* case" and "at the judicial and agency levels," *Ellis*, 443 F.3d at 88 (emphasis in original), which are not at issue here.

Therefore, based on a review of the factors considering the two main purposes of the

15

doctrine, a stay is not warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to Rules 12(b)(1) and 12(c) is GRANTED with respect to the claims for declaratory relief (Complaint ¶ 52) and breach of contract (Count III), but is DENIED with respect to the GBL claims (Counts I and II). The application for a stay is DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 50.

SO ORDERED.

Dated: September 23, 2020
       New York, New York

                                          **LORNA G. SCHOFIELD**
                                          **UNITED STATES DISTRICT JUDGE**